IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DALE H. HENCEROTH and<br>MARILYN S. WENDT, on Behalf of<br>Themselves and Others Similarly Situated,<br><br>        Plaintiffs,<br>  v.<br><br>CHK UTICA, L.L.C.<br>5100 North Western Avenue<br>Oklahoma City, Oklahoma 73154<br>Serve on: CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>TOTAL E&P USA, INC.<br>1201 Louisiana Street – Suite 1800<br>Houston, Texas 77002<br>Serve on: CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>ENERVEST OPERATING, L.L.C.<br>1001 Fannin Street<br>Houston, TX 770002<br>Serve on: Capitol Corporate Services, Inc.<br>4568 Mayfield Road, Suite 204<br>Cleveland, Ohio 44121<br><br>PELICAN ENERGY, L.L.C.<br>P.O. Box 18756<br>Oklahoma City, Oklahoma 73154<br>Serve on: CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>JAMESTOWN RESOURCES, L.L.C.<br>P.O. Box 18756<br>Oklahoma City, Oklahoma 73154<br>Serve on: CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>        Defendants. | CASE NO. 18-cv-00753-CAB<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs, on behalf of themselves and others similarly situated, sue CHK Utica, L.L.C.; Total E&P USA, Inc.; Enervest Operating, L.L.C.; Pelican Energy, L.L.C.; and Jamestown Resources, L.L.C. for breach of contract.

## SUMMARY OF CLAIM

1. This action concerns 623 Ohio oil and gas leases that were entered into by Anschutz Exploration Corporation ("Anschutz") and later assigned by Anschutz to Chesapeake Exploration, L.L.C. ("CELLC").

2. Currently pending in this Court is a certified class action against CELLC for breach of contract for the underpayment of oil and gas royalties under the Anschutz leases. See *Dale H. Henceroth, et al. v. Chesapeake Exploration, L.L.C.*, Case No. 4:15-cv-2591 ("*Henceroth I*").

3. CELLC assigned a portion of its lessee interest in the Anschutz leases to Defendant CHK Utica, L.L.C. ("CHK Utica"), an affiliate, and to Defendants Total E&P USA, Inc. ("Total E&P"), Enervest Operating, L.L.C. ("Enervest"); Pelican Energy, L.L.C. ("Pelican"); and Jamestown Resources, L.L.C. ("Jamestown").

4. As a result of these assignments, Defendants joined CELLC as lessees on the Anschutz leases and have the obligation to pay royalties under those leases.

5. Like CELLC, Defendants breached the leases by calculating the royalties on the incorrect price.

6. Defendants transfer title to the raw well product at the well to marketing affiliates. The marketing affiliates process the well product into oil, gas and NGLs and sell those products, separately priced, to unaffiliated third-party buyers in downstream markets.

7. Rather than pay the royalties on the price paid by the third-party buyers, Defendants pay the royalties on the price paid by the third-party buyers *less* the costs incurred by the marketing

affiliates between the well and the downstream sale to the third-party buyers. These costs include the costs of gathering, compression, dehydration, processing, fractionation and interstate transportation.

8. Although there are three different royalty provisions in the Anschutz leases, correctly construed they all require the lessee to pay a royalty on the price paid by the third-party buyers without cost deductions.

9. The leases all expressly provide that the royalties shall be paid on gas that is "produced *and marketed*." (emphasis added). When a gas producer sells its gas to a marketing affiliate for resale, marketing "plays a part" only in the resale. *Pollock v. Energy Corporation of America*, 665 Fed. Appx. 212, 214 (3d Cir. 2016). Defendants' contractual obligation to pay the royalties on "marketed" oil and gas requires them to pay the royalties on marketed oil and gas, i.e., on the price paid by the third-party buyers.

10. All Defendants breached the leases by failing to pay the royalties on "marketed" oil and gas, that is, on the price paid by the third-party buyers without cost deductions.

11. The leases also require that the royalties be paid on the "proceeds realized" or "price actually received" by the lessee. Except for the apparent exception of Defendant Total E&P, the only "proceeds realized" or "price actually received" is the price paid by the third-party buyers. *See Canfield v. Statoil USA Onshore Properties, Inc.*, 2017 WL 10781884 *17 (M.D. Pa., April 22, 2017) (holding that in oil and gas law "amount realized" is synonymous with "proceeds;" "amount realized" or "net proceeds" means "proceeds received;" and "proceeds" means "the *money* obtained by an *actual sale*.") (quoting Williams & Meyers, Manual of Oil and Gas Terms) (emphasis added).

12. Except as for the apparent exception of Defendant Total E&P, no "money" is paid in the purported wellhead sales to Defendants. Instead, with the apparent exception of Defendant

Total E&P, Defendants are merely "credited" the sales through "accounts receivables" that are recorded on accounting ledgers maintained by their parent companies. See *Henceroth* I at 10-11.

13. This Court held, in granting Plaintiffs' motion for class certification in *Henceroth I*, that the account receivables on Chesapeake Energy Corporation's general ledger show a "debt" owed by CEMLLC to CELLC and therefore report an "*unrealized* intra-company transfer of funds between CELLC and CEMLLC." *Id.* (emphasis added).

14. Since the royalty provision in Plaintiffs'' leases requires that the royalties be paid on "revenue *realized*" (emphasis added), the royalties cannot be calculated on an "unrealized" transfer of funds. Since, with the apparent exception of Defendant Total E&P, the only "revenue realized" is the "revenue realized" in the sales to the third-party buyers, the royalties must be paid on the third-party price.

15. There is no "actual sale" by Defendants to their marketing affiliates at the well because, with the apparent exception of Defendant Total E&P, there are no enforceable sales agreements for such sales and no revenue is realized from such sales.

16. No costs can be deducted from the money paid by the third-parties because an oil and gas lessee can only deduct costs that the *lessee* incurs. *Piney Woods Country Life School v. Shell Oil Co.*, 1997 U.S. App. LEXIS 42828 at *37 (5th Cir. April 21, 1997) (only a "lessee's actual expenses" deductible); *Wellman v. Energy Resources*, 557 S.E. 254, 265 (W.Va. 2001) (only costs "actually incurred" deductible). All of the costs deducted from the price paid by the third-party buyers were incurred by the marketing affiliates, not by Defendants. Moreover, an oil and gas lessee can only deduct costs that are incurred while it still holds title. *Pollock v. Energy Corporation of America*, 2015 U.S. Dist. LEXIS 79079 at *4 (W.D. Pa. June 18, 2015), *aff'd*, 665

Fed. Appx. 212 (3d Cir. 2016). Here the costs were all incurred by the marketing affiliates after Defendants no longer held title.

## THE PARTIES

### A. Plaintiffs

17. Plaintiff Dale H. Henceroth is a citizen of Ohio and resides in Columbiana County at 10437 Trinity Church Road, Lisbon, Ohio 44432. On July 6, 2009, Mr. Henceroth and his wife entered into two oil and gas leases with Anschutz pursuant to which they leased Anschutz oil and gas rights to real property in Columbiana County, Ohio (copies of Henceroth leases attached as part of Exhibit 1). Anschutz subsequently assigned the leases to CELLC, which in turn assigned portions of its lessee interest to the Defendants herein.

18. Plaintiff Marilyn S. Wendt is a citizen of Texas and resides at 4818 Forestwood Boulevard, Tyler, Texas 75703. On January 2, 2009 and February 1, 2009, Mrs. Wendt and her deceased husband, as Trustees to the Wendt Living Trust ("the Trust"), entered into two oil and gas leases with Anschutz pursuant to the Trust leased Anschutz oil and gas rights to real property in Columbiana County, Ohio (copies of Wendt leases attached as part Exhibit 1). Anschutz subsequently assigned both leases to CELLC, which in turn assigned portions of its lessee interest to the Defendants herein. Ms. Wendt is now the sole Trust lessee on both leases.

### B. Defendants

19. Defendant CHK Utica, L.L.C. ("CHK Utica") is a limited liability company formed under the laws of Oklahoma with its principal place of business at 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

20. Defendant Total E&P USA, Inc. ("Total E&P") is a corporation formed under the laws of Delaware with its principal place of business at 1201 Louisiana Street, Suite 1800, Houston, Texas 77002.

5

21. Defendant Enervest Operating, L.L.C. ("Enervest") is a limited liability company formed under the laws of the state of Delaware with its principal place of business at 1001 Fannin Street, Houston, Texas 77002.

22. Defendant Pelican Energy, L.L.C. ("Pelican") is a limited liability company formed under the laws of the state of Oklahoma with its principal place of business at P.O. Box 18756, Oklahoma City, Oklahoma 73154.

23. Defendant Jamestown Resources, L.L.C. ("Jamestown") is a limited liability company formed under the laws of the state of Oklahoma with its principal place of business at P.O. Box 18756, Oklahoma City, Oklahoma 73154.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because the named Plaintiffs are residents of Ohio, at least one Class Member is a citizen of a different state than the Defendants, the damages of the Class Members exceed $5,000,000 in the aggregate, and there are more than 100 Class Members. Venue is proper because most of the Plaintiffs reside in this judicial district and many of the leases subject to this action convey gas rights to real property in this judicial district.

## FACTS

### A. Oil and Gas Leasing

25. Oil and gas producers enter into oil and gas leases with the owners of oil and gas rights. Under such leases, the owner of the oil and gas rights (the lessor) conveys those rights to the producer (the lessee) in exchange for a royalty on the oil and gas produced and sold each month.

26. Royalties on oil and gas traditionally have been one-eighth of the revenues of the sale of the oil and gas although modern leases sometimes provide for a greater percentage.

27. If a lease so provides, the producer may deduct "post production costs" when calculating the royalties. "Post production costs" are costs incurred between the well and the point at which the lessee transfers title to the oil and gas.

### B. The Anschutz Leases

28. The named Plaintiffs entered into oil and gas leases with Anschutz Exploration Corporation ("Anschutz").

29. Anschutz subsequently all of its Ohio oil and gas leases, including those with the named Plaintiffs, to Chesapeake Exploration, L.L.C. ("CELLC").

30. CELLC subsequently assigned portions of its lessee interests to CHK Utica, L.L.C. ("CHK Utica"), Total E&P USA, Inc. ("Total E&P"), Enervest Operating, L.L.C. ("Enervest"); Pelican Energy, L.L.C. ("Pelican"); and Jamestown Resources, L.L.C. ("Jamestown").

31. There are three different royalty provisions among the 526 Anschutz leases. All of the leases have the following royalty provision in the body of the lease at Section 5(B). This section reads:

> 5(B) ROYALTY: To pay Lessor as Royalty, less all applicable taxes, assessments, and adjustments on production from the Leasehold, as follows:
>
> 1. OIL: To deliver to the credit of Lessor, free of cost, a Royalty of the equal one-eighth part of all oil and any constituents thereof produced and marketed from the Leasehold.
>
> 2. GAS: To pay Lessor an amount equal to one-eighth of the net proceeds realized by Lessee from the sale of all gas and the constituents thereof produced and marketed from the Leasehold. Lessee may withhold Royalty payment until such time as the total withheld exceeds twenty-five dollars ($25.00).

32. Group One consists of the 526 leases that are governed solely by Section 5(B) because these leases either have no Addendum with a royalty provision.

7

33. Group Two consists of the 90 leases that have an Addendum with the following royalty provision (which is sometimes referred to in the industry as a "market enhancement" clause):

> All oil, gas or other proceeds accruing to the Lessor under paragraph 5(B) of this Lease shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. In no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

34. Group Three consists of the 7 leases that have an Addendum with the following royalty provision:

> In calculation of Lessor's royalties, the royalty to be paid shall be based upon the price actually received by Lessee from its purchaser of gas and oil. No deduction may be made therefrom. Lessor is entitled, upon request, to receive verification of Lessee's gas or oil prices received.

### C. **Production and Marketing of the Oil and Gas**

35. CELLC produces the oil and gas under the Anschutz leases on behalf of itself and all of the Defendants.

36. CELLC transfers title to its share of the raw well product, along with the shares of CHK Utica, Pelican and Jamestown, to its gas marketing affiliate, Chesapeake Energy Marketing, L.L.C. ("CEMLLC"). CEMLLC then processes the shares of CELLC, CHK Utica, Pelican and Jamestown into oil, natural gas (methane) and natural gas liquids ("NGLs") and markets these products, separately priced, to third-party buyers.

37. Defendant Total E&P transfers title to its share of the raw well product to its gas marketing affiliate. The gas marketing affiliate then processes the raw well product into oil, natural

8


gas (methane) and natural gas liquids ("NGLs") and markets these products, separately priced, to third-party buyers.

38. Defendant Enervest transfers title to its share of the raw well product to its gas marketing affiliate. The gas marketing affiliate then processes the raw well product into oil, natural gas (methane) and natural gas liquids ("NGLs") and markets these products, separately priced, to third-party buyers.

### D. The Calculation of the Royalties

39. When paying the royalties on the oil, gas and NGLs produced and marketed under the leases, Defendants do not pay the royalties on the price paid by the third-party buyers, but on the price paid by the third-party buyers less costs incurred between the well and the downstream sale to the third-party buyers.

## CLASS ACTION ALLEGATIONS

40. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1-39 of this Complaint.

41. The Plaintiffs bring this action on behalf of themselves and the following Class:

> Every person except governmental entities who is, or has been, a royalty owner under an oil and gas lease in which (1) Anschutz Exploration Corporation is named as the lessee; (2) the lease was assigned or otherwise acquired by Chesapeake Exploration, L.L.C., (3) Chesapeake Exploration, L.L.C. assigned or otherwise conveyed a portion of its lessee interest to CHK Utica, L.L.C., Total E&P USA, Inc., Enervest Operating, L.L.C.; Pelican Energy, L.L.C.; and/or Jamestown Resources, L.L.C.; (4) the lease conveys rights to oil, natural gas and natural gas liquids in Ohio and (5) one or more of these products was produced under the lease.

42. The Class Members exceed 2,000 in number, making joinder impracticable. Plaintiffs do not presently know the exact number and identities of the Class Members, but they can be ascertained from the books and records of the Defendants.

43. The claims set forth in this Complaint are common to all Class Members because Defendants underpaid the gas royalties of all Class Members in the same way.

44. Plaintiffs are adequate representatives of all Class Members because the claims they assert are typical of the claims of all Class Members, the named Plaintiffs are not subject to any unique defenses, the interests of Plaintiffs do not conflict with those of the Class Members and Plaintiffs will fairly and adequately protect the interests of all Class Members.

45. Counsel to the Plaintiffs have extensive experience in complex litigation. This experience includes litigating cases in all state and federal courts in Ohio and the U.S. Courts of Appeals for the Third, Fourth, Sixth and D.C. Circuits. Robert C. Sanders, who will be moving for admission *pro hac vice* on behalf of Plaintiffs, concentrates his practice in oil and gas royalty underpayment cases. Mr. Sanders obtained class certification in all three cases in which he has sought certification and, in one of those cases, obtained a federal jury verdict for the plaintiff class that was affirmed on appeal.

46. The claims set forth in this Complaint are proper for certification as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to the class predominate over any issues affecting individual class members.

47. The common questions of fact include: (1) whether Defendants calculated the royalties using an "at the well" price; (2) whether Defendants had marketing departments or any employees engaged in marketing; (3) whether Defendants had an office from which to market; (4) whether Defendants had a bank account from which they could pay marketing costs, such as gathering, compression, processing, fractionation and interstate transportation; (5) whether Defendants had any employees; (6) whether Defendants had a bank account from which they could pay employees; (7) whether Defendants transferred title to any well product to marketing affiliates,

(8) whether Defendants contracted to sell any well product to an affiliate under an enforceable contract; (9) whether the marketing affiliates paid money to Defendants for any well product; (10) whether Defendants had bank accounts into which they could receive payments of money; (11) whether the marketing affiliates marketed well products to third-party buyers; (12) whether Defendants or the marketing affiliates paid the costs of marketing the well products to the third-party buyers; (13) whether any costs incurred were incurred after Defendants transferred title; (14) whether Defendants were "credited" for the sale of well products on accounting ledgers; (15) whether the credits were recorded as accounts receivable, and (16) whether the credits equaled the amounts paid by the third-party buyers.

48. The common questions of law include: (1) whether an oil and gas lessee can "market" oil and gas if it has no marketing department, no employees engaged in marketing, no bank account, no office and no enforceable written contract to sell any well products; (2) whether an oil and gas lessee can be "paid proceeds" if it has no bank account; (3) whether a "credit" on a general ledger constitutes the "payment of proceeds;" (4) whether an oil and gas lessee can deduct costs that it does not incur; and, (5) whether an oil and gas lessee can deduct costs that are incurred after it has transferred title.

49. No other class action in Ohio asserts the claim asserted in this action.

50. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted because there are thousands of Class Members and individual discovery and litigation of the common issues by each lessor would be a needless waste of judicial resources. The interest of Class Members in individually controlling the prosecution of separate actions does not outweigh the benefits of a class action. It is desirable to concentrate the litigation

11

of these claims in one forum. Any difficulties in managing this case as a class action are outweighed by the benefits a class action in resolving common issues of law and fact.

51. The prosecution of separate actions by Class Member separately would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, could be dispositive of interests of persons not parties to the individual actions, and could substantially impair or impede the ability of those persons to protect their interests. Further, Defendants acted, or refused to act, on grounds generally applicable to all Class Members.

52. A class action is superior to all other methods for the fair and efficient adjudication of the claims in this case. The class is readily definable, the prosecution of a class action would eliminate the possibility of repetitious litigation and a class action would provide redress for persons unable to bring their claims individually. Maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications. In contrast, a class action would determine the rights of all Class Members with judicial economy and uniformity.

## COUNT I

## BREACH OF CONTRACT

53. Plaintiffs re-allege and incorporate by reference paragraphs 1-52 of this Complaint.

54. Oil and gas was produced under each of the leases subject to this action.

55. Each named Plaintiff and other Class Member is or was entitled to royalty payments pursuant to one or more of the leases with Defendants or a predecessor lessee of Defendants.

56. Defendants made periodic royalty payments to each named Plaintiff and other Class Member pursuant to one or more of the leases subject to this action

57. Defendants breached the leases by failing to pay the royalties on the price paid by the third-party buyers without cost deductions.

58. Defendants' breaches of the leases proximately caused damages to Plaintiffs and the other Class Members because, as a direct and proximate result of the breaches, Defendants paid Plaintiffs and the other Class Members less than the full amount of oil and gas royalties due them.

WHEREFORE, the Plaintiffs, on behalf of themselves and the other Class Members, request certification of this action as a class action, judgment in their favor and against Defendants for breach of contract, compensatory damages, pre-judgment interest, post-judgment interest and costs of the suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the other Class Members, demand a trial by jury as to all issues and claims triable to a jury.

Respectfully submitted,

*/s/ Mark A. Hutson*
Mark A. Hutson (0012537)
MARK A. HUTSON LAW OFFICE
33 Pittsburgh Street
Columbiana, OH 44408
Tel: (330) 482-4040
Fax: (330) 482-1953
mhutson@markhutsonlaw.com

James A. Lowe (0002495)
LOWE EKLUND & WAKEFIELD CO., LPA
1660 West Second Street
610 Skylight Office Tower
Cleveland, OH 44113-1454
Tel: (216) 781-2600
Fax: (216) 781-2610
jlowe@lewlaw.com

                Robert L. Guehl (0005491)
                GUEHL LAW OFFICES
                2312 Far Hills Avenue, Suite 350
                Dayton, OH 45419
                Tel: (937) 479-5598
                Fax: (888) 547-2528
                RGuehlEsq@gmail.com

*Counsel for the Plaintiffs*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2018, a copy of the foregoing was served via the Court's CM/ECF system, thereby causing a copy to be served on all parties listed in the Court's CM/ECF registry for this case.

> */s/ Mark A. Hutson*
> Mark A. Hutson (0012537)
> MARK A. HUTSON LAW OFFICE
> 33 Pittsburgh Street
> Columbiana, OH 44408
> Tel: (330) 482-4040
> Fax: (330) 482-1953
> mhutson@markhutsonlaw.com